# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GUTIERREZ, | 1:11cv0105 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Carlos Gutierrez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications on September 16, 2005, and September 10, 2006, alleging disability since September 1, 2000, due to depression, anxiety and hepatitis C. AR 107-122, 158-

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

164. After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 4, 50, 51. ALJ Thomas J. Gaye held hearings on June 1, 2009, and November 5, 2009, and issued a decision denying benefits on November 24, 2009. AR 5-15, 20-49. The Appeals Council denied review on December 10, 2010. AR 1-3.

<u>Hearing Testimony</u>

*June 1, 2009*

ALJ Gaye held a hearing on June 1, 2009, in Bakersfield, California. Plaintiff appeared with his attorney, Rosemary Abarca. Vocational expert ("VE") Ken Farrow also appeared. AR 39.

Plaintiff testified that he had not used drugs in 10 years. He last drank in 2008 and goes to AA. AR 44-45.[2] He explained that he stopped using all drugs and alcohol in 2000, but had a "setback" in 2008 when he had 3 or 4 beers. AR 46. Plaintiff believed that, in addition to his physical problems, he could not work because he could not concentrate, is always scared and hears voices. AR 46.

Plaintiff's attorney explained that his leg impairment is the main impairment, but that there were also mental health issues. The ALJ ended the hearing and indicated that a psychiatrist would assist at the next hearing. AR 48-49.

*November 5, 2009*

ALJ Gaye held a second hearing on November 5, 2009, in Bakersfield, California. Plaintiff appeared with his attorney, Ms. Abarca. VE Linda Ferra and Medical Expert David Glasheyer, M.D., also appeared and testified. AR 20.

Plaintiff was 44 years old at the time of the hearing. He "absolutely" stopped drinking and testified that he stopped over 2 years ago, as best he could remember. AR 24. The ALJ noted that at the June hearing, there was evidence that Plaintiff was drinking in 2008. Plaintiff

---

[2] At the hearing, the ALJ explained that his drinking was an issue because he claimed an onset date of September 2000.

indicated that he was not sure of his exact sobriety date, but that he hasn't been drinking.  AR 24-25.

Dr. Glasheyer testified that Plaintiff began treatment with Kern County Mental Health in April 22, 2007.[3] AR 26.  Plaintiff had a drinking problem and was diagnosed with major depressive disorder and personality disorder, not otherwise specified, but these impairments did not meet or equal a listed impairment.  AR 27.  However, the impairments would lead to limitations in the work place, including a limitation to simple, repetitive tasks, no contact with the public and only non-intense contact with coworkers and supervisors.  AR 27.  Plaintiff could not be responsible for the safety of others and he should not operate dangerous equipment.  AR 27.  The last two limitations were based on his substance abuse and would not be necessary if Plaintiff did not drink.  AR 28.

When questioned by the ALJ, Plaintiff testified that he did not get a high school diploma or GED, and tried one year of community college.  AR 28-29.  He has not worked in a few years and he is supported by his mother and food stamps.  AR 29.

Plaintiff explained that he could not work because of bad anxiety and a hurt right leg.  Plaintiff's anxiety is so bad right now that it is really difficult to leave the house.  His medication is strong and make him want to sleep.  He has a hard time sleeping, though, because he hears things.  AR 29-30.

Plaintiff has had a cane for 4 years and uses it all the time.  AR 30-31.  He cannot walk without the cane and cannot sit for more than 15 to 25 minutes without pain.  Plaintiff elevates his leg for 20 hours a day.  AR 31.  He stares at the television all day and estimated that he gets out of the house once a month.  AR 32-33.

For the first hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, and stand and walk for 2 hours.  This person could not use leg controls and could not push or pull with either leg.  He could never climb ropes, ladders or scaffolding but could occasionally kneel, stoop, crouch and crawl.  This person had to avoid concentrated exposure to hazards and would be limited to simple, repetitive tasks

---

[3] At this point in the hearing, Plaintiff withdrew his Title II application because the date last insured was earlier than April 22, 2007.  AR 27.

3

with no public contact and only non-intense contact with coworkers and supervisors.  The VE testified that this person could not perform Plaintiff's past work but could perform the positions of assembler and almond blancher.  The VE testified that there were 1,500 assembler jobs in California, with 15,000 nationwide, and 1,000 almond blancher jobs in California, with 10,000 nationwide.  AR 36-37.

For the second hypothetical, the ALJ asked the VE to add an inability to complete tasks in a timely manner because of the need to take unscheduled breaks.  The VE testified that no jobs would be available.  AR 37-38.

Medical Record

Plaintiff raises a single issue, which is legal in nature, in this appeal.  Accordingly, the medical record is not relevant and will not be summarized.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of depressive disorder, personality disorder, substance abuse disorder in current remission and right knee degenerative osteoarthritis.  AR 10.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform restricted light work.  AR 11.  With this RFC, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy and was therefore not disabled.  AR 15.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder, personality disorder, substance abuse disorder in current remission and right knee degenerative osteoarthritis) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy. AR 10-15.

Here, Plaintiff argues that the ALJ erred at step five by failing to demonstrate that he could perform a significant number of jobs.

## DISCUSSION

Plaintiff contends that the ALJ failed to make an adequate showing that a significant number of jobs exist in the region in which he lives, or in several regions of the country. In making his argument, Plaintiff asks the Court to define the term "region" as "the Metropolitan or Micropolitan Statistical Area encompassing the area where the claimant resides." Opening Brief, at 7.

At step five of the sequential evaluation process, the Commissioner bears the burden of demonstrating that Plaintiff can perform "other work" that exists in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). Pursuant to the regulations, work exists in the national economy "regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be fired if he applied for work." 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1566(b), 416.966(b). The regulations further explain that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b).

The ALJ determined that Plaintiff could perform the positions of assembler, which has 1,500 jobs available in California and 15,000 jobs available nationally, and almond blancher, which has 1,000 jobs available in California and 10,000 jobs available nationally. AR 15. In a prior case, this Court examined whether 2,756 jobs within California was sufficient to meet the Commissioner's burden. The Court explained:

> Here, the ALJ identified 2,756 positions in the State of California. While California may be a large state, there is nothing to suggest that the positions were either isolated or existed in relatively few locations. For example, in *Barrett v. Barnhart*, 368 F.3d 691 (7th Cir.2004), the Seventh Circuit explained that the identification of the test of claimant's entitlement to benefits as whether she was so disabled that there were no jobs "in reasonable proximity to where she lived," comported with the statutory standard. The principle significance of the statutory language is to prevent SSA from denying benefits on the basis of isolated jobs existing only in very limited numbers in relatively few locations outside claimant's region. *Id*. at 691. The court continued, "[i]n our experience, and, it seems, in that of other circuits as well, the vocations experts who testify ... concerning availability of jobs that the applicant has the physical ability to

> perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." *Id*. This, the court found, is a proper interpretation of the statutory standard. *Id*.; *see also Trimiar v. Sullivan*, 966 F.2d 1326, 1329-1332 (10th Cir.1992) (finding no error in the ALJ's finding that 650 to 900 jobs in the state of Oklahoma constituted a significant number); *Gonzalez v. Sec'y of Health and Human Serv.*, 773 F.Supp. 994, 996 (W.D. Mich.,1991) (citing an unpublished Sixth Circuit case as follows, "We believe it is clear that the term 'region' is flexible and that the Secretary did not err in considering the number of jobs existing in the entire State of Michigan ... The fact that the statute speaks in terms of work existing in the national economy and does not restrict the Secretary to consideration of work that exists in the immediate area of a claimant's residence gives the Secretary sufficient latitude to treat an entire state as the region to be considered.")
>
> Therefore, Plaintiff's argument that 2,756 positions spread across California is not a sufficient number fails in light of the interpretation of the governing statute. The Dictionary of Occupations Titles defines usher, code 344.677-014, as an individual who "[a]ssists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display." Such positions would likely be available at every movie theater and entertainment venue throughout the State of California, negating a conclusion that the position was either isolated or existed in very few locations.

*De La Cruz v. Comm'r*, 2009 WL 1530157, *10-11 (E.D. Cal. 2009).

As in *De La Cruz*, there is nothing here to suggest that the positions of assembler and almond blancher, especially where Plaintiff resides within the agricultural San Joaquin Valley, were "isolated jobs that existed only in very limited numbers in relatively few locations" outside of the region in which Plaintiff resides. Indeed, Plaintiff does not make this argument and he has not cited any law requiring a different result. The reasoning in *De La Cruz* applies equally here and under the law within the Ninth Circuit, Plaintiff's argument fails. *See eg., Barker v. Sec'y Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989) (declining to find a minimum number of jobs necessary to constitute a significant number within the meaning of the Act); *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir. 1986) ("Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer.").

Instead, perhaps in anticipation of this result, Plaintiff asks the Court to "define the term region as it is used throughout the federal government in the absence of any definition of the term by the Commissioner." Opening Brief, at 7. Specifically, Plaintiff asks the Court to adopt "Metropolitan and Micropolitan Statistical Areas," which are geographic entities defined by the Office of Management and Budget for use by federal statistical agencies in collecting and

tabulating federal statistics. Using this theory, Plaintiff suggests that here, the "region" should be defined as Bakersfield-Delano, where he resides. As the VE did not restrict his testimony to this local economy or find that work existed in "several regions," Plaintiff impugns error.

The Court disagrees, however, that the term "region" needs further definition. Although there is no precise definition, there is sufficient language in the surrounding regulations and case law to guide the Court's analysis.

The regulations are clear that it does not matter whether work exists in the immediate area where a claimant lives. 20 C.F.R. §§ 404.1566(a)(1), 416.966(a)(1) ("It does not matter whether work exists in the immediate area in which you live"). Indeed, the Ninth Circuit has affirmed an ALJ's finding that the plaintiff could work based on available jobs "in all regions of the national economy." *Mayes v. Massanari*, 276 F.3d 453, 461 (9th Cir.2001).

Consistent with this paradigm and as explained above, the regulations also inform us as to what does *not* constitute significant work- "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b).

Given these directives, the Court will not import terms used by other federal agencies into the Social Security Act. Nor will the Court declare that the State of California, as Plaintiff suggests, is not an appropriate "region."[4] Vocational Experts often state available jobs in terms of the number of positions available within California and nationwide, and absent Ninth Circuit authority invalidating this approach, the Court will not make such a finding.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

---

[4] According to Plaintiff, "[r]egion does not mean a state that is 770 miles north to south and 250 miles east to west." Opening Brief, at 7.

```
```
...

Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Carlos Gutierrez.

IT IS SO ORDERED.

Dated:   **January 25, 2012**                          /s/ **Dennis L. Beck**
                                                   UNITED STATES MAGISTRATE JUDGE